*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2014 UT 4**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

BARTON JASON BAGNES,
*Defendant and Appellant.*

No. 20100882
Filed February 14, 2014

Third District, West Jordan
The Honorable Terry L. Christiansen
No. 091401264

Attorneys:

Sean D. Reyes, Att'y Gen., Ryan D. Tenney, Michelle I. Young,
Asst. Att'ys Gen., Salt Lake City, for plaintiff

Joanna E. Landau, Kimberly A. Clark, Neal G. Hamilton,
Noella A. Sudbury, Salt Lake City, for defendant

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1    Barton Bagnes challenges the sufficiency of the evidence to support his convictions for lewdness involving a child and sexual exploitation of a minor by distribution of child pornography. Bagnes's offense was in dropping his pants in front of two young girls, exposing a toddler-sized diaper he wore underneath, and in distributing a flyer depicting images of diaper-clad children and adolescents. We reverse. Bagnes's conduct was strange, and socially inappropriate. But it did not fall to the level of criminal lewdness or sexual exploitation under the criminal definition of those terms as clarified below.

I

¶2    The charges against Bagnes arose out of an encounter he had with two nine-year-old girls, T. and K., in May 2009. T. and K. were riding their bikes in the neighborhood of their homes when they saw Bagnes, who was sucking on a candy binky, and greeted him. When Bagnes approached, the girls noticed that his shorts were too low, exposing part of a diaper he was wearing underneath. T. asked Bagnes about the diaper, and Bagnes indicated that he wore it "for fun." He also went on to suggest that he wore the diaper because his "parents never potty trained him" and he would "pee his pants" without one.

¶3    Bagnes then dropped his shorts to his knees, exposing the diaper in full. It was a diaper made for 40+ pound toddlers with a cartoon image of the Sesame Street character Elmo on the front. Although Bagnes is a small man, the diaper was still too small, leaving a "large gap" between "the front and back" of the diaper. The diaper was held together by clear plastic tape. It did not completely cover his buttocks, but it did cover his pubic area and apparently the girls "couldn't see the back" of his diaper or his buttocks

¶4    Bagnes had a fanny pack with diapers and flyers inside. The flyers contained images of children and adolescents wearing diapers. In some of the images the children were shown in arguably suggestive poses or lying on beds, but in none of them were they engaged in sexual conduct or exposing their private parts. On the back of the flyer the URLs of two websites were written in colored crayon, and identified as "cool kids sites" or "best kids sites."

¶5    One of the URLs was for a site that displayed suggestive images of children in sheer underwear, with blinking stars covering their private parts. A click on those images would, in turn, lead to pornographic images of children and adults. The other URL was connected to a Russian search engine that then led to a number of pornographic websites.

¶6    There is no indication in the record that the girls ever saw or became aware of the contents of the websites in question. But they did find one of the flyers, which Bagnes had folded into a paper airplane, and they also asked him for another copy after their encounter with him.

¶7 Bagnes gave K. another copy of the flyer, while suggesting that she shouldn't tell her parents about it because they would think it was a joke and laugh at her. T. and K. left the flyers at T.'s house, and T.'s mother later discovered them. She then called the police. And she called once more a few days later when T. and K. saw Bagnes in the neighborhood again.

¶8 Bagnes was arrested and ultimately charged with two counts of lewdness involving a child under Utah Code section 76-9-702.5 and one count of sexual exploitation of a minor under Utah Code section 76-5a-3(1)(a).[1] At trial, Bagnes asserted that he showed children his diaper in order to help those who might be struggling with incontinence or similar problems. He also admitted to having shown his diaper to children "a lot," while denying that he did so for sexual gratification. As to his encounter with T. and K., Bagnes acknowledged displaying his diaper, but denied fully pulling down his shorts. Defense counsel also argued that Bagnes's shorts may have accidentally fallen off because of their poor fit.

¶9 The jury found Bagnes guilty on all three counts. Bagnes filed this appeal, asserting three principal grounds for reversal: (a) that the evidence was insufficient to sustain convictions for lewdness or sexual exploitation of a minor; (b) that the district court erred in declining to give a lesser-included offense instruction on a charge of disorderly conduct; and (c) that the district court erred in admitting testimony of five other children regarding similar incidents involving Bagnes.

¶10 We reach only the first of these three grounds, because we deem it sufficient to sustain a judgment of reversal. In addressing a sufficiency of the evidence claim, we may reverse only when "it is apparent that there is not sufficient competent evidence as to

---

[1] The lewdness statute has been amended, and the relevant sexual exploitation provisions have been amended and renumbered, since the time of Bagnes's convictions. *See* UTAH CODE § 76-9-702.5 (lewdness) (amended 2011); UTAH CODE § 76-5b-201 (sexual exploitation of a minor) (amended 2011); UTAH CODE § 76-5b-103 (definitions) (amended 2011). None of the amendments appear to affect our analysis, however, and we cite to the statutes in effect at the time of Bagnes's convictions.

each element of the crime charged." *State v. Boyd*, 2001 UT 30, ¶ 13, 25 P.3d 985 (internal quotation marks omitted). Our review of the evidence itself is deferential. *See State v. Dunn*, 850 P.2d 1201, 1212 (Utah 1993). We may reverse a verdict "only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that defendant committed the crime for which he or she was convicted." *Id.* At the same time, a review of a sufficiency of the evidence argument may also present a threshold question of law—of the elements of the underlying offense. And on that question, of course, our review is non-deferential, as our interpretation of the terms of the criminal law is ours to make de novo. *State v. Parduhn,* 2011 UT 57, ¶16, 266 P.3d 765.

## II

¶11   The two counts of lewdness involving a child arose under Utah Code section 76-9-702.5. That provision criminalizes certain forbidden conduct intentionally or knowingly done "in the presence of a child who is under 14 years of age." UTAH CODE § 76-9-702.5(1). The forbidden acts include "sexual intercourse or sodomy"; exposure of the "genitals, the female breast . . . the buttocks, the anus, or the pubic area"; masturbation; causing a child to expose herself; and "any other act of lewdness."[2] *Id.*

---

[2] The statute provides in full as follows:

> (1) A person is guilty of lewdness involving a child if the person under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, sexual abuse of a child, aggravated sexual abuse of a child, or an attempt to commit any of those offenses, intentionally or knowingly does any of the following to, or in the presence of, a child who is under 14 years of age:
>
> > (a) performs an act of sexual intercourse or sodomy;
> > (b) exposes his or her genitals, the female breast below the top of the areola, the buttocks, the anus, or the pubic area:
> > > (i) in a public place; or
> > > (ii) in a private place:

¶12 Bagnes was charged under this latter provision—with an "other act of lewdness." Thus, the threshold question for us concerns the definition of this term. We then consider the sufficiency of the evidence to sustain a conviction under this definition.

A

¶13 The term "lewdness" is not defined by statute. We must accordingly look elsewhere to derive its meaning—to either the ordinary meaning of the word,[3] or to its technical sense as a legal term of art.[4]

¶14 A starting point for our assessment of ordinary meaning is the dictionary. *See Hi-Country Prop. Rights Grp. v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851. The dictionary is "useful in cataloging a range of possible meanings that a statutory term may bear." *Id.* "It provides 'an historical record, not necessarily all-inclusive, of the meanings which words in fact have borne.'" *Id.* Yet the dictionary alone is often inadequate to the task of interpretation, as the range of possible meanings it identifies may encompass both parties' positions.

¶15 That is the case here. A *lewd* act is sometimes defined in general terms of impropriety—as something vulgar, base, or vile. *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE

---

(A) under circumstances the person should know will likely cause affront or alarm; or

(B) with the intent to arouse or gratify the sexual desire of the actor or the child;

(c) masturbates;

(d) under circumstances not amounting to sexual exploitation of a child under Section 76-5a-3, causes a child under the age of 14 years to expose his or her genitals, anus, or breast, if female, to the actor, with the intent to arouse or gratify the sexual desire of the actor or the child; or

(e) performs any other act of lewdness.

UTAH CODE § 76-9-702.5(1).

[3] *See State v. Canton*, 2013 UT 44, ¶ 13, 308 P.3d 517; *Hi-Country Prop. Rights Grp. v. Emmer*, 2013 UT 33, ¶ 19, 304 P.3d 851.

[4] *See Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647.

1106 (2d ed. 1987) (defining lewd as "base, vile, or wicked, esp. of a person"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1301 (2002) (defining the term as "base, evil, wicked—used of persons and their conduct"). Alternatively, the term is also defined more narrowly to be limited to matters of a sexual, lascivious nature. *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1106 (2d ed. 1987) ("[i]nclined to, characterized by, or inciting to lust or lechery; lascivious"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1301 (2002) ("[s]exually unchaste or licentious: dissolute, lascivious"). The distinction may be significant here (as developed more below), as Bagnes's conduct is more easily characterized as generally improper than as lascivious.

¶16 We read the statute to incorporate the narrower notion of lascivious lewdness—of lewdness involving misconduct of a sexual nature. First, the more general notion of lewdness as mere general baseness or vulgarity is identified in the cited dictionaries as obsolete. *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1106 (2d ed. 1987) (identifying general definitions of lewd as obsolete); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1301 (2002) (same). Thus, because our role in interpreting the statute is to give its words the meaning they would have had in the minds of the general public at the time of enactment, *see Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465, we can discard mere obsolete notions of the statutory text as beyond its reach.

¶17 Second, a statutory standard turning on subjective assessments of general impropriety would implicate constitutional concerns. The specific problem here is one of vagueness. *See In re L.G.W.*, 641 P.2d 127, 131 (Utah 1982) (plurality opinion of Oaks, J.) (noting that "[u]ncertainties about the perimeters of the common-law definition of lewdness have . . . resulted in some lewdness statutes being held void for vagueness"). If the criminality of a defendant's act depends on each judge's—or each jury's—private sense of the bounds of social propriety, the due process guarantee of notice will be jeopardized. The more limited, contemporary notion of lewdness avoids that constitutional concern, and is thus preferred on constitutional avoidance grounds.

¶18 Third, the structure of the statute reinforces this construction. The phrase "any other act of lewdness" does not appear in isolation. It is a catchall term at the end of an exemplary list. Such

phrasing implicates a semantic canon of construction—*ejusdem generis*—that captures a principle of ordinary usage under a fancy Latin name. In essence, this canon posits that general catchall terms appearing at the beginning or end of an exemplary statutory list are understood to be informed by the content of the terms of the list. *See State ex rel. A.T.*, 2001 UT 82, ¶ 12, 34 P.3d 228. And as applied here, the canon reinforces a more limited notion of lewdness in the sense of lascivious misconduct of a sexual nature.

¶19 Under the *ejusdem generis* canon, catchall elements of statutory lists may be "understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent." *Id.* Here the statute's enumerated acts of lewdness (sex acts, exposure of private parts, masturbation) suggest a limiting principle for the catchall "any other act of lewdness." The limiting principle is this: To qualify as an "other act of lewdness," the defendant's conduct must be "similar in kind"—involving an element of lasciviousness—to acts enumerated in the statute. *Id.* ¶ 13. That does not mean that catchall "lewdness" must be "as seriously offensive as" the listed acts; but the charged conduct must be "similar in kind, class, character, or nature as the others." *Id.*

¶20 The facts and holding of *A.T.* (a case decided under a parallel criminal provision for lewdness involving a person 14 years of age or older, Utah Code section 76-9-702) illustrate the point. In *A.T.* we upheld the extension of the term "other act of lewdness" to circumstances in which the defendant "stood in public view, on the walk in front of the convenience store," and "with the intent to offend his identified victim, clutched at his clothed genitals, rubbing them up and down in a sexually suggestive manner for ten to fifteen seconds like 'someone playing with themselves.'" *Id.* ¶ 10. In affirming A.T.'s conviction, we endorsed a limited construction of lewdness, informed by the *ejusdem* canon. Specifically, we held that the catchall category of lewdness "includes the simulation of masturbation in a public place with the intent to offend, just as it would the simulation of sexual intercourse or sodomy under the same circumstances." *Id.* ¶ 13.

¶21 Finally, and perhaps most importantly, the statute's terms sustain this same interpretation. The statutory definition of lewdness is circular: Lewdness is defined to encompass not just the enumerated acts but "any other act of lewdness." This circularity

suggests that the legislature "conveyed its acceptance" of a "widely shared meaning" of the notion of lewdness. *Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n*, 2014 UT 3, ¶ 14, __ P.3d __ (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). And the common-law, term-of-art notion of lewdness incorporates a principle of lasciviousness. It defines lewdness as "a specific kind of public indecency, defined as 'unlawful indulgence of lust.'" 3 WHARTON'S CRIMINAL LAW § 307 (15th ed. 1995); *see also In re L.G.W.*, 641 P.2d at 131 ("At common law, the crime of lewdness consisted of the irregular indulgence of lust or other sexually oriented behavior that is indecent or offensive in a public place.").

¶22 For all these reasons, we reject the broad notion of lewdness generally encompassing any act of impropriety. We interpret the statute instead to partake of a narrower notion of lewdness marked by lasciviousness—in the common-law sense of the irregular indulgence of lust.

¶23 In other words, "other act[s] of lewdness" encompasses conduct similar to, but not falling precisely within, the enumerated acts. The similarity, moreover, must be in terms of lasciviousness or indulgence of lust. So the catchall term applies to conduct that does not precisely amount to one of the enumerated lewd acts but that "dramatize[s], gesticulate[s], imitate[s], or . . . simulate[s]" such acts. *State v. Piep*, 2004 UT App 7, ¶ 9, 84 P.3d 850 (reversing conviction for an "other act of lewdness" in connection with charge of display and discussion of book containing sexual content). Thus, simulated masturbation qualifies as an "other act of lewdness." *In re A.T.*, 2001 UT 82, ¶ 11. And a parallel principle would extend to the other lewd acts enumerated by statute: A simulated sex act could amount to an "other act of lewdness," as could an act of virtual exposure of private parts (for example, by an effective exposure through clothing that literally covers the body but is sheer enough to enable its public perception).

B

¶24 We reverse for lack of sufficient evidence under this standard. There was no evidence at trial that Bagnes simulated any sex act or masturbation, or that he effectively exposed his private parts.

¶25 In exposing his diaper, Bagnes undoubtedly startled those around him. A diaper in this context would certainly have been

8

perceived as unusual, even disturbing. But it in no way resulted in the effective exposure of Bagnes's private parts. The closest it came was in its failure to fully cover his buttocks; but the record indicates that Bagnes never turned to show either of the girls the backside of his diaper, so there was no virtual exposure of the buttocks.

¶26  A diaper is one of the most opaque, bulky articles of clothing one could imagine wearing as an undergarment. If virtual exposure is the question, we cannot deem the public display of a diaper to qualify unless we are prepared to also criminalize a range of other clothing that is much less opaque and far less obscuring (such as certain swimwear, or even athletic or workout attire). The difference between the former and the latter is social acceptability—not lasciviousness in the form of virtual exposure. And the statutory definition of the crime has nothing to do with the former and only to do with the latter.

¶27  The State suggests that Bagnes's conduct betrays a sort of "infantilism," a sexual fetish that "manifests itself in a desire to wear diapers." *United States v. Mood*, 741 F. Supp. 2d 821, 823 (E.D. Mich. 2010). But there was no evidence of such a fetish presented at trial. Nor does the evidence identify any words or gestures from Bagnes that could be deemed to contextualize his conduct as the enactment of a lascivious fetish. The closest Bagnes came is in his distribution of the flyers, but the flyers are insufficient to transform a mere oddity (display of an adult diaper) into a criminal act of lewdness (by virtual exposure).

¶28  A defendant's internal lust for sexual gratification alone is insufficient to establish lewdness. The threshold question is whether the defendant's conduct consisted of a lascivious act amounting to the virtual exposure of his private parts. Absent any indication of that, the private realization of a fetishized sexual fantasy alone would not make his conduct criminal.

¶29  Finding no evidence of lascivious, virtual exposure, we reverse Bagnes's convictions for lewdness involving a child.

III

¶30  The sexual exploitation charge against Bagnes arose under Utah Code section 76-5a-3(1). That provision defines sexual exploitation of a minor to encompass (a) the knowing production, possession, distribution, or possession with intent to distribute of

9

"child pornography"; and (b) the knowing consent or permission of a minor's parent or legal guardian for the minor to be sexually exploited under subsection (a). UTAH CODE § 76-5a-3(1). "Child pornography" is defined by statute as "the visual depiction . . . of a minor engaging in sexually explicit conduct." *Id.* § 76-5a-2(1). And "sexually explicit conduct" is defined, in turn, as "actual or stimulated":

> (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (b) masturbation;
> (c) bestiality;
> (d) sadistic or masochistic activities;
> (e) lascivious exhibition of the genitals or pubic area of any person;
> (f) the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person;
> (g) the fondling or touching of the genitals, pubic region, buttocks, or female breast; or
> (h) the explicit representation of the defecation or urination functions.

UTAH CODE § 76-5a-(2)(8)(a-h).

¶31 Bagnes's conviction rested on subsection (e). The State's evidence and arguments to the jury centered on the assertion that he had distributed "child pornography" in that the diaper-clad children on his flyers constituted a "lascivious exhibition" of the "pubic region" of children.

¶32 The threshold legal question for us is the interpretation of the statutory term "lascivious exhibition." We first provide our construction of the statute and then consider Bagnes's challenge to the sufficiency of the evidence thereunder.

A

¶33 Some of the same principles invoked in interpreting the lewdness statute also extend to our construction of the "lascivious exhibition" element of the definition of child pornography incorporated in the sexual exploitation statute. As with lewdness, "exhibition" is defined to encompass a range of meanings. Dictionary

definitions of the verb "exhibit" include the notion of making something visible, on one hand, or more generally manifesting or flaunting it, on the other. *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 678 (2d ed. 1987) (defining "exhibit" as "to offer or expose to view," "to manifest or display," or "to place on show"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (2002) (defining the term as "to present to view" or to "show off"). The noun "exhibition" encompasses the same range of definitions. *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 678 (2d ed. 1987) (defining "exhibition" as "an exhibiting, showing, or presenting to view"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (2002) (defining the term as "an act or instance of showing, evincing, or showing off").

¶34 Again, the choice between these alternative formulations could make all the difference here, since (as explained more below) Bagnes's flyers can more easily be understood to *manifest* or *flaunt* the pubic region of diaper-clad children than to make those regions *visible*. And again, a range of contextual cues point in favor of a more limited conception of this statutory term.

¶35 First and foremost is the principle of constitutional avoidance. This statute implicates not just notice but also free speech concerns, in that a broad construction of *exhibition* could raise not just due process (void for vagueness) issues but also First Amendment (overbreadth) considerations.[5] These constitutional

---

[5] *See, e.g., Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) (striking down as overbroad two definitional provisions of Child Pornography Prevention Act of 1996 because they intruded on expression protected by the First Amendment); *United States v. Handley*, 564 F. Supp. 2d 996, 1005–07 (S.D. Iowa 2008) (statutes prohibiting the receipt or possession of what appears to be a minor engaged in obscene or sexually explicit conduct were impermissibly overbroad in violation of the First Amendment since they did not contain limiting construction that would avoid the prohibition of images that involved neither actual minors nor obscenity); *DLS, Inc. v. City of Chattanooga*, 914 F. Supp. 193, 197 (E.D. Tenn. 1995) (city ordinance prohibiting dressing or undressing within adult-oriented establishment so as to evince intent to arouse sexual desires was likely to be deemed overbroad and void for vagueness, for purposes of injunctive relief).

concerns counsel against an overbroad construction of our criminal laws regulating visual displays of arguably communicative acts.

¶36 Our Victorian past is well behind us. We no longer live in a society where our style conventions and social mores clamor for head-to-toe cover-up. The opposite is closer to the truth. Right or wrong, our society roundly tolerates—and often encourages—ever-less sartorial coverage of the human body. Whether at the gym, the pool, the beach, or even the public square, we routinely encounter those who would flaunt or manifest their (heretofore) private parts, including their pubic regions. And depictions of these sorts of "exhibitions" are peppered across the pages of our mainstream magazines, catalogs, newspapers, etc. (in print and online).

¶37 Purveyors of this material would hardly expect to face criminal charges for child pornography or sexual exploitation. And if they were so charged, they could undoubtedly maintain strong constitutional defenses under the Free Speech and Due Process Clauses.[6]

¶38 We therefore reject a broad conception of *exhibition* in the sense of mere flaunting or manifesting. To avoid the overbreadth and vagueness problems noted above, we construe the term instead in its more narrow sense of making the pubic region visible to public perception.

¶39 In so doing, we do not limit *exhibition* to the display of outright nudity. That construction, in fact, is undermined by the statutory text and structure, which defines child pornography to encompass not just depictions of "lascivious exhibition" of the "pubic region" but also, separately, depictions of "the visual depiction of nudity or partial nudity for the purpose of causing sexual

---

[6] *See, e.g., Jenkins v. Georgia*, 418 U.S. 153, 161 (1974) (reversing conviction for distribution of film depicting nudity and in which sexual conduct was "understood to be taking place"); *Jacobellis v. Ohio*, 378 U.S. 184 (1964) (Brennan, J., plurality opinion) (reversing obscenity conviction based on film that contained a single explicit sex scene); *United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011) (reversing conviction for lascivious exhibition where defendant filmed minor in tanning booth).

arousal of any person." UTAH CODE § 76-5a-2(8)(f). The implication is that "lascivious exhibition" is distinct from a "visual depiction of nudity."

¶40 With this in mind, we construe *exhibition* in a manner in line with our interpretation of lewdness above: A person *exhibits* the pubic region (or another of the private parts identified in the statute) in making that area virtually visible even if not entirely naked. This standard would be met, for example, by a depiction of a pubic region covered only by a nearly transparent fabric, leaving the pubic region literally covered but virtually visible; or only by an ultra-thin, form-fitting fabric, leaving the contours of the genitals virtually discernible.[7]

¶41 Finally, we emphasize that a depiction of an *exhibition* alone is not sufficient; the statute requires a depiction of a *lascivious exhibition*. On this important point we read the statute to invoke a limiting legal principle. Thus, we adopt a widely endorsed standard of "lascivious exhibition" as "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994). The standard "look[s] to the materials themselves" rather than to the subjective intentions of those distributing the image. *State v. Morrison*, 2001 UT 73, ¶ 10, 31 P.3d 547. It also considers the relevant context, however, and that context includes an appropriate concern for the "sexual innocence of children," recognizing that that "which constitutes a 'lascivious exhibition' of a child[] will be different from that . . . of an adult[]." *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).

¶42 In defining the concept of *lascivious* exhibition of the "genitals or pubic area" of a child, we adopt the widely endorsed *Dost* test, as previously invoked by this court in *Morrison*. 2001 UT 73, ¶¶ 18–20. *Dost* does not establish a "rigid test," *id*. ¶ 18, but instead identifies a range of factors relevant to the inquiry into lasciviousness. Those factors include: (1) "whether the focal point of the vis-

---

[7] *See United States v. Wallenfang*, 568 F.3d 649, 658 (8th Cir. 2009) (upholding conviction for child pornography where photograph featured young girl whose "pubic area [was] clearly visible through . . . pantyhose" (emphasis omitted)).

ual depiction is on the child's genitalia or pubic area"; (2) "whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity"; (3) "whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of a child"; (4) "whether the child is fully or partially clothed, or nude"; (5) "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity"; and (6) "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832.[8]

¶43 *Dost* provides a "qualitative" framework to guide the inquiry into lasciviousness. *Knox*, 32 F.3d at 746 n.10. Thus, there is no single dispositive factor under *Dost*, and no requirement that any particular number of factors weigh in one direction or another. *See United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989). Instead *Dost* offers an illustrative list of considerations that may inform the court's determination of whether a particular depiction crosses the line of "lascivious exhibition." The inquiry ultimately focuses on the question whether the exhibition "'[depicts] a child's sex organs displayed lasciviously—that is, so presented by the photographer as to arouse or satisfy the sexual cravings'" of an intended audience. *United States v. Wolf*¸ 890 F.2d 241, 245 (10th Cir. 1989) (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1989)).

---

[8] In *Morrison*, the defendant was charged under a predecessor to Utah Code section 76-5b-103(10)(f), which requires that the images be created "for the purpose of causing sexual arousal of any person." Under that section of the statute, we treated the sixth *Dost* factor—"whether the visual depiction is intended or designed to elicit a sexual response in the viewer"—as a mere summation of the others, and not as a separate factor. *Morrison,* 2001 UT 73, ¶ 19. The provision before us today presents no such complication. Bagnes is charged under Utah Code section 76-5b-103(10)(e), which does not require that the depiction be for purposes of causing sexual arousal. Accordingly, we apply *Dost* as originally conceived, with the sixth factor considered independently.

B

¶44 We reverse Bagnes's sexual exploitation conviction under this standard. Bagnes's flyers in no way depicted any *exhibition* of the pubic region. The children and adolescents depicted in the flyers were wearing diapers, and the diapers did not make their pubic regions visible in any way. It completely obscured them.

¶45 Thus, this is not a case involving literal exposure of the pubic area by actual nudity, or even virtual exposure through a nearly transparent cover. Absent evidence of exhibition, there can be no child pornography and thus no basis for a conviction for sexual exploitation.[9] We accordingly reverse without reaching or applying the *Dost* factors, since a lack of proof of exhibition forecloses a need to consider the element of lasciviousness.

IV

¶46 Barton Bagnes undoubtedly startled the young girls he encountered in their neighborhood. And his conduct was certainly deplorable. But the evidence did not sustain the charges against him.

¶47 Some forms of antisocial behavior are simply beyond the reach of the criminal law. That appears to be the case here, at least insofar as the charges of lewdness and sexual exploitation are concerned.

————————

[9] The URLs that Bagnes identified on his flyers did ultimately link to websites containing pornographic images. But the sexual exploitation charge against Bagnes was not for any depiction or display of those images, but only for the images on the flyer.