**2021 UT 37**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

MICHAEL ALAN JORDAN,
*Petitioner.*

No. 20191034
Heard May 12, 2021
Filed July 29, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Ann Boyden
No. 141910848

Attorneys:

Robert T. Denny, Salt Lake City, for petitioner

Sean D. Reyes, Att'y Gen., Kris C. Leonard, Assistant Solic. Gen.,
Matthew B. Janzen, Salt Lake City, for respondent

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1   In this case we are asked to interpret the terms of the Utah
Code defining the crime of sexual exploitation of a minor—
specifically, the definition of "[c]hild pornography" under Utah
Code section 76-5b-103. "Child pornography" is defined to
include "any visual depiction" of "sexually explicit conduct"
where "the production of the visual depiction involves the use of
a minor engaging in sexually explicit conduct." UTAH CODE § 76-
5b-103(1)(a). And "[s]exually explicit conduct" is defined to
include a "visual depiction of nudity or partial nudity for the
purpose of causing sexual arousal of any person." *Id.* § 76-5b-
103(10)(f). We hold that a factfinder may consider extrinsic

evidence of the sexual purpose of a person charged with producing a visual depiction of nudity—the purpose inquiry is not limited to the four corners of the image itself. And we affirm the court of appeals' decision rejecting a claim for ineffective assistance of counsel under this view of the statute.

I

A

¶2    In 2008 Michael Alan Jordan was living in West Valley City near a single mother and her three children.[1] Jordan developed a relationship with the oldest son, twelve-year old Mark.[2] Mark introduced Jordan to his mother and soon considered Jordan a father figure. Jordan and the mother were married in 2010. They later had two children of their own.

¶3    According to Mark, Jordan began to sexually abuse him soon after they met and continued to do so for the next five or six years. In 2014, when Mark was seventeen, Jordan showed him photographs of Jordan sexually abusing Mark's younger brother, Luke.[3] Mark was devastated. He later told Jordan that he would be moving out of the house as soon as he turned eighteen (in September 2014). Thereafter, Jordan began getting rid of incriminating evidence and reported that his laptop had been stolen.

¶4    The police received an anonymous call requesting a "welfare check" at the family home on the day after Mark's eighteenth birthday. When a police officer arrived, Jordan reported that Luke was "fine" and the officer left the residence. Once the officer and Jordan were gone, Luke decided it was time

---

[1] In considering a challenge for sufficiency of the evidence, "we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation omitted). "We present conflicting evidence only as necessary to understand issues raised on appeal." *Id.* (citation omitted).

[2] This not the victim's real name but a pseudonym adopted by the court of appeals (to protect the anonymity of the victims). We use the same pseudonyms adopted by the court of appeals.

[3] This is also a pseudonym.

to tell his mother that everything was "not okay." He told her that Jordan had been sexually abusing him for over five years. The mother then met with the police and took both Luke and Mark in for police interviews.

¶5 The police uncovered a vast collection of child pornography when they recovered Jordan's "stolen" laptop. Jordan was charged with thirty-three counts of child sex crimes, including aggravated sexual abuse of a child, sodomy on a child, forcible sodomy of a child, sexual exploitation of a minor, witness tampering, and dealing in material harmful to minors.

¶6 The case proceeded to trial, and Mark and Luke both testified that Jordan had sexually abused them for years. Each stated that the abuse included Jordan showing them pornography and taking nude or partially nude photographs of them. Luke also testified that Jordan had showed him a gun and told him that if he ever disclosed the abuse, Jordan would shoot him and his family.

¶7 At trial the prosecution also introduced evidence of various photographs obtained from Jordan's laptop. Some of the photographs depicted Mark's naked body, including his genitals. Two others—Exhibits 21 and 22—depicted one of Jordan's then-toddler-aged sons.

¶8 Exhibit 21 depicts Jordan's nude toddler sitting on a bathroom counter with shaving cream on his face and a razor in his right hand. The boy's genitals are exposed and centered as the focal point of the image. A nude Jordan can be seen as reflected in the bathroom mirror, although his genitals are not seen in the photograph. The toddler's mother testified that Jordan took this picture.

¶9 Exhibit 22 depicts Jordan's toddler son playfully running naked outside near an irrigation ditch. There is no evidence in the record as to who took this photo. The toddler's mother testified that she did not know who had taken it, and there was no metadata identifying the source of the photo.

¶10 In closing argument, the prosecutor invited the jury to consider extrinsic evidence in assessing whether images constituted child pornography. Regarding Exhibit 21, the prosecutor asserted that Jordan "wasn't taking a picture of his son because he's cute, because he wants a picture of his kid in the bathroom. He was doing it because it's child pornography." Appealing to "common sense," the prosecutor said, "in this case, in light of all of the evidence that you've heard, there should be no

doubt that the defendant took that picture because he wanted a picture of a naked little boy. Why? Because he's sexually attracted to boys." The defense attorney did not object to the prosecutor's statement and did not request a distinct jury instruction on the relevance of Jordan's intentions.

¶11 The jury entered a verdict of guilty on all thirty-three counts against Jordan. He then filed a timely appeal and also moved for remand under rule 23B of the Utah Rules of Appellate Procedure.

B

¶12 In the appeal, Jordan asserted a claim for ineffective assistance of counsel based on his lawyer's failure to object to the prosecutor's request that the jury consider Jordan's subjective intentions in deciding whether Exhibits 21 and 22 qualified as child pornography under Utah law. He also asserted that the State had failed to present sufficient evidence—such as expert testimony—that the individuals depicted in four other photographs were minors.

¶13 In the motion for remand under rule 23B, Jordan sought leave to develop a record to support a claim that trial counsel had been ineffective in failing to investigate allegations that Luke had previously made false allegations of sexual abuse—allegations that may have opened the door to impeachment of Luke's credibility under rule 412 of the Utah Rules of Evidence. *See State v. Martin*, 1999 UT 72, ¶ 16, 984 P.2d 975 (explaining that rule 412 opens the door to "evidence of an alleged rape victim's previous false allegations of rape"). In addition, Jordan also sought leave to develop a record in support of an allegation that Mark had had full access to Jordan's laptop computer—an allegation that conceivably could have opened the door to the argument that Jordan had not had constructive possession of a few of the images found on the laptop.

¶14 The court of appeals reversed in part, affirmed in part, and remanded for limited proceedings under rule 23B.

¶15 First, the court concluded that Jordan had asserted a successful claim for ineffective assistance of counsel with respect to the Exhibit 22 but not Exhibit 21. *State v. Jordan,* 2018 UT App 187, ¶ 52, 438 P.3d 862. Citing *State v. Morrison*, 2001 UT 73, 31 P.3d 547, the court recognized that there are "potential constitutional infirmities" implicated by the imposition of

criminal liability for mere *possession* of photographs depicting child nudity "merely on the basis of the intent of the possessor of the photograph." *Jordan*, 2018 UT App 187, ¶ 47 (citing *Morrison*, 2001 UT 73, ¶ 10). But it concluded that there were no such "infirmities" in considering the intent of a *producer* of such photographs. *Id*. The State may "establish criminal liability under the exploitation of a minor statute" by proving that a photograph "was created 'for the purpose of causing sexual arousal of any person.'" *Id*. ¶ 48 (quoting UTAH CODE § 76-5b-103(10)(f)). And the court of appeals held that "[o]ne way to prove that the minor was depicted 'for the purpose of causing sexual arousal of any person' is to establish that Jordan himself took the photograph for the purpose of causing his own sexual arousal." *Id*.

¶16 The court of appeals affirmed Jordan's conviction based on Exhibit 21 on that basis. *Id.* ¶ 50. It cited evidence in the record that Jordan had taken that photo. *Id.* And it concluded that trial counsel had not been ineffective because any objection to the prosecutor's argument "likely would have been overruled" given that it "was not improper" under the law. *Id.*

¶17 The court of appeals reversed Jordan's conviction based on Exhibit 22, however. *Id.* ¶ 51. It noted that the State had not introduced any evidence as to how that photo had been produced or who had taken it. *Id.* And with that in mind, the court of appeals held that trial counsel had been ineffective in failing to object to the State's argument. *Id.* It also held that there was "at least a reasonable probability of a better outcome from Jordan, with respect to this one count, had such an objection been made." *Id*. And it reversed and remanded for a new trial on the charge related to Exhibit 22. *Id.* ¶ 52.

¶18 Second, the court of appeals held that the State had failed to present sufficient evidence of the ages of the subjects depicted in Exhibit 35, another photograph found on Jordan's laptop computer. *Id.* ¶ 64. Citing *State v. Alinas*, 2007 UT 83, 171 P.3d 1046, and cases from other jurisdictions, the court of appeals concluded that "where the minority of" models in alleged child pornography "is in question, 'the trial court must examine each image to be presented to the jury in order to'" decide "which of the images can be evaluated by the jury on a common-knowledge basis and which require expert testimony to assist the jury in determining whether the person depicted' is a minor." *Jordan*, 2018 UT App 187, ¶ 62 (quoting *State v. May*, 829 A.2d 1106, 1120 (N.J. Super. Ct. App. Div. 2003)). Under this standard, the court of

appeals held that "no expert assistance" was needed with respect to three of four images challenged by Jordan on appeal. *Id.* ¶ 63. But it concluded that there was no "principled way for a lay jury to determine" whether either of the individuals depicted in one image was a minor "without the benefit of expert testimony to assist it." *Id.* ¶ 64. And it vacated the judgment of conviction on the count related to this image. *Id.*

¶19 Finally, the court of appeals granted Jordan's rule 23B motion in part. *Id.* ¶¶ 38–39. It concluded that Jordan had carried his burden of establishing a basis for a remand to develop a record in support of some of the ineffective assistance of counsel claims set forth in his motion. *Id.* ¶ 39. And it set forth specific points to be explored on remand on these issues. *Id.* ¶ 68.

¶20 Jordan filed a petition for writ of certiorari, asserting that the court of appeals had erred in its determination that the prosecutor had not misstated the law in inviting the jury to consider Jordan's subjective purpose in taking the photograph depicted in Exhibit 21. We granted the petition in an order asking the parties to brief the question "[w]hether the Court of Appeals erred in concluding that evidence of Petitioner's subjective purpose in taking a photograph of a nude child provided a sufficient basis for a conviction for sexual exploitation of a minor by a producer of the photograph."

II

¶21 A threshold issue concerns the scope of the questions presented for our review. Jordan frames the questions through the lens of his claim for ineffective assistance of counsel. He asks us to assess not just whether the prosecutor's statements in closing argument were legally correct, but whether he has a viable claim for ineffective assistance of counsel in challenging those statements.

¶22 The State seeks a narrower inquiry. It notes that our order granting certiorari made no express reference to Jordan's claim for ineffective assistance of counsel. And it asks us to "decline to review" the elements of ineffective assistance on that basis—while also asserting that the claim fails on its own terms in any event.

¶23 The State has a point from the standpoint of the bare text of our order granting certiorari. *See supra* ¶ 20. The order makes no mention of the ineffective assistance of counsel claim. It focuses instead on whether the court of appeals erred in

concluding that "subjective purpose in taking a photograph of a nude child" could provide a "sufficient basis for a conviction of sexual exploitation of a minor by a producer of the photograph."

¶24 The order must be understood in the context of the governing standard of review, however. And that standard makes clear that our review of the correctness of the court of appeals' decision must account for the standard of review that governs that court's decision. *See Estate of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 9, 449 P.3d 112 (explaining that "[i]n reviewing [a] court of appeals' decision we apply the same standard of review that it would apply in reviewing the decision of the district court").

¶25 Jordan failed to preserve an objection to the prosecutor's statements in closing argument. So the court of appeals' analysis arose in the course of its determination that Jordan had failed to assert a viable claim for ineffective assistance of counsel. The court of appeals held that Jordan's subjective purpose was a legally appropriate ground for a conviction in a case like this one. But it advanced that conclusion in the course of its determination that Jordan had no viable a claim for ineffective assistance of counsel — in holding that any objection by trial counsel would have been "futile" given the correctness of the State's legal position. *State v. Jordan,* 2018 UT App 187, ¶ 50, 438 P.3d 862.

¶26 Our order granting Jordan's petition for writ of certiorari could have been clearer. But the order should be viewed in light of the posture of the case and the standard governing the court of appeals' review—the standard for assessing a claim for ineffective assistance of counsel. And that standard frames our analysis of the correctness of the court of appeals' decision.

¶27 We affirm the court of appeals' decision under this standard. We agree with the court of appeals' interpretation of the governing terms of the Utah Code. And we reject Jordan's attempts to refute that interpretation under our case law and under the doctrine of constitutional avoidance. We accordingly affirm the decision to reject Jordan's ineffective assistance of counsel claim on the ground that any objection to the prosecutor's statements at closing argument would have been futile.

A

¶28 The sexual exploitation charge against Jordan arises under Utah Code section 76-5b-201. That provision defines sexual exploitation of a child to include the knowing production, possession, or distribution of "child pornography." UTAH CODE

§ 76-5b-201. "Child pornography" is defined by statute to include "the visual depiction of sexually explicit conduct" where "the production of the visual depiction involves the use of a minor engaging in sexually explicit conduct." *Id.* § 76-5b-103(1)(a). And "sexually explicit conduct" is defined, in turn, as "actual or simulated":

> (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (b) masturbation;
>
> (c) bestiality;
>
> (d) sadistic or masochistic activities;
>
> (e) lascivious exhibition of the genitals, pubic region, buttocks, or female breast of any person;
>
> (f) the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person;
>
> (g) the fondling or touching of the genitals, pubic region, buttocks, or female breast; or
>
> (h) the explicit representation of the defecation or urination functions.

*Id.* § 76-5b-103(10).

¶29 Jordan's conviction under Exhibit 21 rests on subsection (10)(f). In speaking of this photograph to the jury, the prosecutor noted that Jordan had taken the photo and alluded to evidence of Jordan's subjective sexual interest in children (including his own stepsons). And he accordingly asked the jury to conclude that Jordan had taken this picture for the purpose of his own sexual arousal—"[b]ecause he's sexually attracted to boys."

¶30 Jordan contends that this was legal error. He insists that the statutory inquiry into whether an image qualifies as child pornography under our law must be "limited to the four corners of the image" itself. And he asserts that the prosecutor misstated the law in inviting the jury to consider the "subjective purpose" of the person who produced the image.

¶31 We disagree. By statute, a person is guilty of sexual exploitation of a minor if he "knowingly produces" child pornography. *Id.* § 76-5b-201(1)(a)(i). And child pornography is

defined to include a "visual depiction of nudity" of a child "for the purpose of causing sexual arousal of any person." *Id.* § 76-5b-103(10)(f). Nothing in the terms of the statute requires that the "purpose" be evident on the face of the image or visual depiction.

¶32 Knowing production of a depiction of child nudity is actionable if it is "for the purpose of causing sexual arousal of any person." The person producing the image qualifies as "any person." He thus cannot escape criminal responsibility by noting that other persons might not see anything sexual in a depiction of nudity made for the purpose of his arousal.

¶33 This interpretation aligns with our recent precedent.[4] It is also confirmed by two canons of interpretation. One is the longstanding prohibition on adding terms or conditions not stated on the face of the statutory code. *See Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 19 & n.15, 428 P.3d 1096 (appealing to the "substantive terms canon"—elsewhere called the "omitted-case canon"—and explaining that it provides that "[n]othing is to be added to what the text states or reasonably implies [so that] a matter not covered is to be treated as not covered") (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012)). Another is the presumption against an interpretation that would render coordinate terms of a statute meaningless or superfluous. *See Monarrez v. Utah Dep't. of Transp.*, 2016 UT 10, ¶ 11, 368 P.3d 846 (noting that we avoid an interpretation that "renders parts or words in a statute inoperative or superfluous" (citation omitted)).

¶34 The anti-surplusage canon causes problems for Jordan's interpretation in light of Utah Code section 76-5b-103(10)(e). Subsection (10)(e) states that "[s]exually explicit conduct" encompasses the "lascivious exhibition of the genitals, pubic region, buttocks, or female breast of any person." UTAH CODE § 76-5b-103(10)(e). And this subsection is aimed at visual depictions of child nudity that facially "excite lustfulness or sexual stimulation in the viewer." *See State v. Bagnes*, 2014 UT 4, ¶ 41, 322

---

[4] *See State v. Hatfield*, 2020 UT 1, ¶ 47, 462 P.3d 330 (concluding that an image qualifies as child pornography under section 76-5b-103(10)(f) if it is a visual depiction of "actual nudity or partial nudity of a minor" and the producer took the picture "for the purpose of causing sexual arousal").

P.3d 719 (citation omitted) (interpreting subsection (10)(e) to have this focus).

¶35 The subsection (10)(e) category thus encompasses the prohibition that Jordan has in mind. If the sexual purpose of a visual depiction of child nudity is evident in the "four corners of the image itself," the image will qualify as a "lascivious exhibition" under subsection (10)(e). And that suggests that the subsection (10)(f) category sweeps more broadly—to encompass a depiction of child nudity produced for the subjective purpose of sexual arousal of the person who created the depiction.

¶36 Subsection (10)(f) stands alone among all of the categories of sexually explicit conduct set forth in section (10). All of the other subsections are defined purely in terms of the conduct ("actual or simulated") depicted in an image. Subsection (10)(f) adds a reference to motive or state of mind—in encompassing a depiction of child nudity "for the purpose of causing sexual arousal of any person." And that reference should be given independent meaning.

¶37 The legislature's stated purpose in criminalizing child pornography is "to prohibit the *production*, possession, . . . and distribution of materials that sexually exploit a minor" in order to "eliminate the market for those materials and to reduce the harm . . . inherent in the perpetuation of" a record of "sexually exploitive activities." UTAH CODE § 76-5b-102(1)(e) & (2) (emphasis added). A person who photographs a naked child for the purpose of his own sexual arousal has exploited the child.[5] And the perpetuation of a record of that exploitation is a harm that the legislature has targeted—in defining child pornography broadly to encompass the depiction of child nudity "for the purpose of sexual arousal of any person."

---

[5] *See New York v. Ferber*, 458 U.S. 747, 758–59 (1982) (noting, in the course of analyzing whether a state statute that prohibits knowingly distributing material depicting children engaged in sexual performances violated the First Amendment, that state legislatures may determine that abuse occurs in the course of production of child pornography in the "use of children as subjects of pornographic materials" and may properly seek to constrain the distribution network for such materials in an attempt to prevent its production).

¶38 We must credit the terms of the statutory definition. To do so, we hold that a visual depiction of child nudity qualifies as child pornography if it was produced for the purpose of sexual arousal.

B

¶39 Jordan resists this interpretation under (1) the analysis in our opinion in *State v. Morrison*, 2001 UT 73, 31 P.3d 547, and (2) the doctrine of constitutional avoidance. We find neither point persuasive.[6]

1

¶40 Jordan quotes a line from *Morrison* in support of his view that the courts should "look to the [allegedly offending] materials themselves, not the intent of the possessor, to determine whether they are proscribed as sexually exploitive." 2001 UT 73, ¶ 10. He asserts that *Morrison* establishes an "objective test" requiring a focus on "the image itself" instead of the subjective purpose of the person who created it. And he insists that the court of appeals was wrong to limit this test to cases involving mere possession of child pornography.

¶41 We disagree. The quoted line from *Morrison* comes from a portion of the opinion in which we were rejecting the premise of an overbreadth challenge to the constitutionality of an antecedent to the statute at issue in this case. *Id.* The defendants had been charged with knowing possession of depictions of child nudity "for the purpose of causing sexual arousal of any person." *Id.*

---

[6] Jordan also challenges the State's approach under the so-called *Dost* factors—a set of non-exclusive considerations that may be useful in assessing whether a given image is framed in a manner that could qualify it as child pornography. *See State v. Bagnes*, 2014 UT 4, ¶¶ 41–43, 322 P.3d 719 (explaining the *Dost* factors); *see also United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) (defining the *Dost* factors). But the *Dost* factors are not a mandatory checklist or controlling test, but an exemplary list of potentially relevant considerations. *See Bagnes,* 2014 UT 4, ¶ 43 (explaining that "*Dost* offers an illustrative list of considerations" for assessing whether an image constitutes child pornography). And such a list does not foreclose consideration of the producer's subjective intent in a case like this one.

¶¶ 2–3. And they asserted that this prohibition was "overbroad in that it prohibit[ed] possession of depictions of nude or partially nude minors" without regard to the nature of the image or the purpose for which it was produced. *Id.* ¶ 8. In rejecting that claim, we acknowledged the existence of federal case law (a) concluding that "material depicting only a nude or partially nude minor, without more, is constitutionally protected," *id.* (citing *New York v. Ferber*, 458 U.S. 747, 765 n.18 (1982) and *Osborne v. Ohio*, 495 U.S. 103, 112 (1990)); and (b) holding that an image that "'does not constitute child pornography . . . does not become child pornography because it is placed in the hands of [a] pedophile, or in a forum where pedophiles might enjoy it.'" *Id.* (quoting *United States v. Villard*, 700 F. Supp. 803, 812 (D.N.J. 1988), *aff'd*, 885 F.2d 117 (3d Cir. 1989)). But we held that the statute avoids these problems because it does not treat an otherwise innocent depiction of nudity as child pornography based merely on the sexual interests or intentions of a possessor. We concluded that a defendant's criminal liability for possession "turns not on his purpose in *possessing* the material, but, rather, on the purpose for which the nude or partially nude minor was *depicted*." *Id.* ¶ 12. "If his possession was knowing, and the nude or partially nude minor was depicted 'for the purpose of causing sexual arousal of any person,'" we held that "a defendant may properly be subject to criminal liability" for possession of child pornography. *Id.* (citation omitted). And we concluded that the defendants' overbreadth challenge failed on that basis. *Id.*

¶42 It was in the context of that analysis that we stated that the courts "look to the materials themselves, not the intent of the possessor, to determine whether they are proscribed as sexually exploitive." *Id.* ¶ 10. And we agree with the court of appeals that that statement in no way forecloses consideration of the subjective intent of a *producer* of sexually explicit material for knowingly producing a depiction of child nudity for the purpose of his own sexual arousal. *See Jordan*, 2018 UT App 187, ¶ 47 (noting that the *Morrison* court "made clear that criminal liability can indeed turn 'on the purpose for which the nude or partially nude minor was *depicted*'" (quoting *Morrison*, 2001 UT 73, ¶ 10)).

¶43 The statute expressly calls for criminal liability where such material is knowingly produced "for the purpose of causing sexual arousal of any person." UTAH CODE § 76-5b-103(10)(f). "[A]ny person" includes the producer of the image, for reasons explained above. *Supra* ¶¶ 32–38. And nothing in *Morrison*

forecloses consideration of that person's subjective purpose in creating an image that qualifies as child pornography under the statute.

2

¶44 Jordan also cites both *Morrison* and a body of First Amendment cases in support of a request that we adopt a "narrow" construction of the statute as a matter of constitutional avoidance. He suggests that the statutory definition of child pornography may be subject to a constitutional overbreadth challenge if it is viewed as criminalizing otherwise-protected speech "based solely on the subjective purpose of the photographer." And he asks us to avoid this constitutional problem by "limiting the analysis of whether an image constitutes child pornography to the four corners of the image."[7]

¶45 We reject this request under the standard for the canon of constitutional avoidance set forth in our case law. The canon "is an important tool for identifying and implementing legislative

_____

[7] Jordan worries that the State's construction of the statute may open the door to a range of line-drawing concerns—in treating "identical photos . . . differently based on the subjective intent of the producer." He raises a hypothetical "where a mother takes a photograph of her nude toddler playing in the bathtub because she believes her child is cute and she wants to cherish the memory" while the father is "standing next to her" and takes the same picture at the same time. The two photos could be indistinguishable if "[p]laced alongside each other in a family photo album." But under the State's view, the father's photo could constitute child pornography if it was taken for the purpose of his own sexual arousal, while the mother's picture would not in light of her purpose.

Perhaps some variations on this concern are addressed through the *mens rea* standard set forth in the statute. Arguably, the requirement of *knowing* possession could insulate a person from a charge of possession of the above-noted photograph taken for the purpose of the father's arousal if the person is unaware of that purpose. Or perhaps such possession would be protected under the First Amendment. We need not and do not resolve any of these questions here, however, because they are not squarely presented for our review. *See infra* ¶ 48.

intent." *Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 23, 332 P.3d 900. It is based on "a presumption that the legislature either prefers not to press the limits of the Constitution in statutes, or it prefers a narrowed (and constitutional) version of its statutes to a statute completely stricken by the courts." *Id.* ¶ 23 (citation and internal quotation marks omitted). "[W]hen a court rejects one of two plausible constructions of a statute on the ground that it would raise grave doubts as to its constitutionality, it shows proper respect for the legislature, which is assumed to legislate in the light of constitutional limitations." *Id.* (citation and internal quotation marks omitted).

¶46 This canon is restricted in its application, however. It comes into play only where a statute is "genuinely susceptible to two constructions." *Id.* ¶ 24 (citation omitted). Such a "determination . . . is made *after, and not before*" the "complexities of a statute are unraveled" by means of our tools of statutory interpretation. *Id.* (citation and internal quotation marks omitted). If and where we can eliminate one of two proffered interpretations as implausible through "ordinary textual analysis," we must implement the statute as written, and are not in a position to override it on the basis of mere doubts about its constitutionality. *State v. Garcia*, 2017 UT 53, ¶ 50 n.7, 424 P.3d 171 (citation omitted).

¶47 We reject Jordan's argument on this basis. For reasons explained above, *supra* ¶¶ 32–38, we conclude that there is only one plausible interpretation of the statutory definition of child pornography—a defendant is subject to criminal liability under Utah Code section 76-5b-103(10)(f) for knowingly producing a depiction of child nudity for the purpose causing the sexual arousal of the producer. And we are in no position to adopt a narrowing construction of that provision under the doctrine of constitutional avoidance.

¶48 In so stating we are not upholding the statute against a constitutional challenge. There is no such challenge before us in this case—just a request that we adopt a narrowing construction. And we are accordingly in no position to opine on the question of whether an image like the one at issue here is constitutionally protected, or whether the statutory definitions in question are susceptible to an overbreadth challenge or other challenge under the First Amendment.

C

¶49 Jordan's ineffective assistance of counsel claim fails in light of the above. To succeed on his claim, Jordan bears the threshold burden of showing that his trial counsel "fell below an objective standard of reasonableness" in failing to object to the prosecutor's statements in oral argument. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Jordan cannot bear that burden where the prosecutor's statements were in line with the law and accordingly unobjectionable.

¶50 The court of appeals rejected Jordan's ineffective assistance of counsel claim on this basis. We affirm that decision.

### III

¶51 Jordan has not identified a basis for challenging the State's invitation for the jury to consider his subjective intention in creating an image that qualifies as child pornography as a depiction of child nudity for the purpose of sexual arousal under Utah Code section 76-5b-103(10)(f). Because the prosecutor did not misstate the law, Jordan's trial counsel did not act unreasonably when he failed to object. We affirm on that basis. And we remand to the district court for further proceedings consistent with this opinion and with the opinion of the court of appeals.

---