*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 1**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee*,

*v.*

MICHAEL SCOTT HATFIELD,
*Appellant*.

No. 20180386
Heard September 20, 2019
Filed January 27, 2020

On Certification from the Court of Appeals

Third District, Salt Lake
The Honorable Judge L. Douglas Hogan
No. 171401406

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Solic. Gen.,
Ryan N. Holtan, Asst. Att'y Gen., Salt Lake City, for appellee

Lori J. Seppi, Heather J. Chesnut, Salt Lake City, for appellant

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1    The State charged Michael Scott Hatfield with four counts of sexual exploitation of a minor after he was caught in the middle school classroom where he taught with "scrapbooks" containing homemade collages comprised of pornographic images of adults and images of underage, and sometimes nude, girls. Hatfield moved the district court to dismiss these charges arguing that the collages did not meet the definition of child pornography in the Sexual Exploitation Act (Act). The court denied Hatfield's motion. Hatfield

then entered a *Sery* plea of no contest to preserve his right to bring this appeal.

¶2 Hatfield's appeal presents two primary questions. First, Hatfield asks us to interpret the Act, and, specifically, the Act's definition of child pornography. *See* UTAH CODE § 76-5b-103(1). Second, he asks us to hold that the Act, properly interpreted, does not criminalize his possession of the collages and that the district court therefore erred by failing to dismiss the charges founded on those images.

¶3 We affirm the district court's denial of his motion to dismiss two of the counts of sexual exploitation of a minor and affirm the convictions based upon those charges. However, we reverse the district court on the remaining two charges.

## BACKGROUND[1]

¶4 Hatfield taught English at a charter school in West Valley City. A school employee found two homemade scrapbooks in Hatfield's classroom desk.[2] Although both scrapbooks contain collages with photographs of minors that were cut and pasted to create the appearance that the minors were engaging in sexual activities, the State based the charges against Hatfield on three pages in a single scrapbook.

¶5 The first collage page (First Page) contains a partial profile of an adult male, mostly clothed, but with his erect penis visible. Above the penis is a cut-out of an open hand. There is also a photograph of a nude pre-pubescent girl facing forward. The photographs of the hand and penis do not touch the photograph of the nude minor, but the effect of the collage is to suggest that the girl

---

[1] Because Hatfield entered a *Sery* plea, we confine our review to the facts Hatfield admitted in the plea agreement and the images in the record. This constrains the way in which we can describe the factual background. By way of example, we know that Hatfield admitted possessing the scrapbook, but we do not have a record basis for asserting that Hatfield created it. This causes us to excessively employ the passive voice to describe the collages' creation.

[2] While identified in the briefing as "scrapbooks," these are small plastic photo albums that can hold approximately twenty four–by–six inch pages.

is reaching to touch the man's erection. The page is also decorated with heart and bow stickers.

¶6 The second collage page (Second Page) is also comprised of a partial profile of an adult male with his erect penis extending from his unzipped pants. On the right side of the page is a cut-out of a fully clothed young girl with her arm in reaching motion so that it appears that she is holding the man's penis. A typed text bubble that says, "Is this right, mister?" hovers above the girl. In the bottom left corner are the typed words, "Teach her well."

¶7 The third collage page (Third Page) contains multiple images. Photographs of two young girls are cut and pasted in the center of the page. Both girls are fully clothed. One of the girls has been positioned so that she appears to be hugging an erect penis—a penis that appears to be taller than she is. In the upper right and left corners of the page are two explicit images of adults engaging in sexual congress. In the bottom right corner is a photograph of a nude pre-pubescent girl facing forward.

¶8 The images of adults appear to have been cut from pornographic magazines. The images of the nude pre-pubescent girls, as well as the clothed smiling girl on the Second Page, were taken from art and photography books. The images of the clothed minors on the Third Page were clipped from personal photographs.

¶9 The State ultimately charged Hatfield with four counts of sexual exploitation of a minor based on the three collage pages. Count one is based on the First Page. Count two is based on the Second Page. Counts three and four are based on the Third Page.[3]

¶10 Hatfield filed a "Motion to Quash the Bindover (Preservation of the Motion Made on Record and Stipulated by the State)." Hatfield argued the three collage pages did not depict minors engaging in sexually explicit conduct and therefore did not meet the statutory definition of child pornography set out in Utah Code section 76-5b-103(1). Hatfield also argued that if the Act

---

[3] It is not entirely clear from the record, but it appears that count three focuses on the nude minor and count four is based on the clothed minor appearing to hug the exaggerated penis. It is also unclear if count four includes the second clothed minor on the Third Page. For the reasons discussed *infra*, even assuming the State based a charge on both clothed girls on the Third Page, that collage would still not meet the statutory definition of child pornography.

criminalized his possession of the collages, then it violates the First Amendment and due process provision of the United States Constitution.

¶11 After a hearing, the district court denied Hatfield's motion. The district court found that none of the photographs constituted child pornography on their own, but when the photographs on a page were considered part of a single collage, each page constituted child pornography under the Act. Specifically, the district court concluded that the pages reflected the "visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person" within the meaning of section 76-5b-103(10)(f). The district court also concluded that the statutory definitions of child pornography in sections 76-5b-103(1) and 76-5b-103(10)(f) were constitutional.

¶12 Hatfield then entered a *Sery* plea of no contest to all four counts of sexual exploitation of a minor. The district court sentenced Hatfield to one to fifteen years in prison on each charge of sexual exploitation of a minor.[4] The court ordered that the sentences run concurrently. The court of appeals certified the case to us for decision.

## ISSUES AND STANDARD OF REVIEW

¶13 As noted above, this appeal presents two primary issues. The first involves the Act's interpretation. "A district court's interpretation of a statute is a question of law, which we . . . review for correctness." *Bell Canyon Acres Homeowners Ass'n v. McLelland*, 2019 UT 17, ¶ 7, 443 P.3d 1212 (alteration in original) (citation omitted) (internal quotation marks omitted).

¶14 The second asks if there was sufficient evidence to sustain four counts of sexual exploitation of a minor. Hatfield appeals the district court's conclusion that sufficient evidence existed to convict him. Hatfield claims he raised the issue by way of a Motion to Quash the Bindover. The State argues that there was no bindover for the district court to quash but acknowledges that Hatfield's motion sought dismissal of the charges based upon a lack of evidence. No matter what label the motion bore, we review whether there was sufficient evidence underlying the four sexual exploitation charges. When "addressing a sufficiency of the evidence claim, we may

---

[4] Hatfield also pled guilty to three counts of accessing pornographic or indecent material on school property. Hatfield received credit for time served for these three counts.

reverse only when it is apparent that there is not sufficient competent evidence as to each element of the crime charged." *State v. Bagnes*, 2014 UT 4, ¶ 10, 322 P.3d 719 (citation omitted) (internal quotation marks omitted).

## ANALYSIS

### I. Interpretation of the Act

¶15 The State charged Hatfield with sexual exploitation of a minor based upon his possession of child pornography. Hatfield claims that the district court misinterpreted the statute and that this misinterpretation caused the district court to erroneously conclude that the images he possessed met the statutory definition of child pornography. This requires us to determine what the Act considers child pornography.

¶16 When interpreting the meaning of a statute, we first look to the statute itself. "The point of statutory interpretation is to understand what the Legislature intended." *State v. Sanders*, 2019 UT 25, ¶ 17, 445 P.3d 453. We do this by looking first to the statute's plain language. *Id.* "As we examine the text, '[w]e presume that the legislature used each word advisedly.'" *Id.* (alteration in original) (citation omitted). However, "we do not view individual words and subsections in isolation; instead, our statutory interpretation 'requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole*.'" *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (emphasis in original) (citation omitted).

¶17 We begin our interpretive task by "examining the ordinary meaning or usually accepted interpretation" of the statutory language. *Arbogast Family Tr. v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035. "When interpreting statutes, we look to the ordinary meaning of the words, using the dictionary as our starting point. After determining our starting point, we then must look to the 'context of the language in question.'" *State v. Lambdin*, 2017 UT 46, ¶ 22, 424 P.3d 117 (citation omitted).[5]

---

[5] We are also mindful of the Legislature's stated intent and purpose in creating the Act. The Act codifies a statement of intent indicating that the Legislature concluded that "sexual exploitation of a minor is excessively harmful to the minor's physiological, emotional, social, and mental development." UTAH CODE § 76-5b-102(1)(a). Further, the Legislature indicated that the purpose of the

(continued ...)

*A.  Sexual Exploitation of a Minor and Child Pornography*

¶18 A person is guilty of sexual exploitation of a minor if he, among other things, "(i) knowingly produces, possesses, or possesses with intent to distribute child pornography; or (ii) intentionally distributes or views child pornography." UTAH CODE § 76-5b-201(1)(a).

¶19 Section 76-5b-103(1)(c) defines child pornography as "any visual depiction . . . whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where . . . the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."

¶20 The Act defines sexually explicit conduct as actual or simulated:

> (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (b) masturbation;
> (c) bestiality;
> (d) sadistic or masochistic activities;
> (e) lascivious exhibition of the genitals, pubic region, buttocks, or female breast of any person;
> (f) the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person;
> (g) the fondling or touching of genitals, pubic region, buttocks, or female breast; or
> (h) the explicit representation of the defecation or urination functions.

*Id.* § 76-5b-103(10).

¶21 The Legislature criminalized both actual and simulated sexual conduct. *See id.* The Legislature did not separately define "actual" when it provided that child pornography portrays actual or simulated sexually explicit conduct. Nor did it tell us what "actual" means when it later defined simulated sexually explicit conduct to

---

Act is to prohibit "the production, possession, possession with intent to distribute, and distribution of materials that sexually exploit a minor." *Id.* § 76-5b-102(2).

require duplication of an "actual act." *See id.* § 76-5b-103(11). But we can construe "actual" consistent with its ordinary meaning.

¶22 "Actual" means "existing in fact or reality" or "not false or apparent." *Actual*, MERRIAM-WEBSTER DICTIONARY ONLINE, www.merriam-webster.com/dictionary/actual; *see also Actual*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1934) (defining actual as "[e]xisting in act or reality; really acted or acting or being; in fact; real"); *Actual*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) (defining actual as "[e]xisting in reality and not potential, possible, simulated, or false; [b]ased on fact"); *Actual*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) (defining actual as "existing in fact or reality; really acted or acting or carried out"). Hence, "actual" sexually explicit conduct requires that one of the activities listed in subsection 103(10) occurred and that the minor engaged in the activity.

¶23 The Act defines "simulated sexually explicit conduct" as "a feigned or pretended act of sexually explicit conduct which *duplicates*, within the perception of an average person, the appearance of an *actual act* of sexually explicit conduct." UTAH CODE § 76-5b-103(11) (emphases added). Simulated sexually explicit conduct requires that even though the depiction does not record one of the activities in subsection 103(10), an average person would perceive the image as duplicating an "actual act" of sexually explicit conduct.

¶24 "Duplicate" is ordinarily understood to mean "to make a copy of" or "to produce something equal to." *Duplicate*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/duplicate; *see also Duplicate*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1934) (defining duplicate (v) as "[t]o double; to fold; [t]o render double; to make a duplicate, copy, or transcript of"; and duplicate (n) as "[t]hat which exactly resembles or corresponds to something else; another, correspondent to the first; hence, a copy; transcript; counterpart"); *Duplicate*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) (defining duplicate (v) as "[t]o make an exact copy of; to make twofold; double"; and duplicate (adj) as "[i]dentically copied from an original"); *Duplicate*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) (defining duplicate (v) as "to be or make a duplicate, copy, or transcript of"; and duplicate (n) as "either of two things that exactly resemble or correspond to each other").

¶25 Thus, subsection 103(11)'s reference to a simulated actual act requires that the image reflect an act that did not in fact happen but

would cause an average person to conclude that the sexually explicit conduct appears to have occurred. *See* UTAH CODE § 76-5b-103(11). Therefore, the Act prohibits all visual depictions of identifiable minors[6] engaging in an actual act of sexually explicit conduct, as well as those simulated acts that appear as if the minors were engaging in an actual act of sexually explicit conduct.

¶26 In short, section 103 defines child pornography as sexually explicit conduct involving identifiable minors. *Id.* § 76-5b-103. This conduct can be actual or simulated. *Id.* § 76-5b-103(10). Actual conduct requires a depiction of one of subsection 103(10)'s activities that actually occurred and requires that the minor engaged in that activity. *See id.* Simulated conduct requires the duplication of an actual act such that the average person would believe that the activity appears to have occurred. *See id.* § 76-5b-103(11). This reading of the Act both reflects the plain language and keeps faith with the Legislature's stated intent and purpose of protecting minors from the physiological, emotional, and social harm that child pornography inflicts. *Id.* § 76-5b-102.

### B. *Hatfield's Arguments*

¶27 Hatfield argues that the district court erred in four ways when it interpreted the Act. First, Hatfield contends that the district court erred by looking at each collage as a whole and not as individual images. Second, Hatfield argues that the district court erred by concluding that the images had been created for the purpose of causing sexual arousal of any person. Third, Hatfield posits that the district court erred in determining that subsection 103(10)(f) of the Act applied to images of clothed minors. Finally, Hatfield argues that the district court erred by not employing the constitutional avoidance canon of statutory construction to read the Act in a manner that kept any of the collages from falling into the Act's orbit.

---

[6] The inclusion of the words "identifiable minor" in the Act requires that an actual child be portrayed in the image. That language appears to be a nod to the United States Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). There, the Court found that the prohibition of non-obscene images depicting "virtual child pornography"—images created without using actual or identifiable minors—violated the First Amendment. *Id.* at 241; *see also State v. Alinas*, 2007 UT 83, ¶¶ 12–15, 171 P.3d 1046.

¶28 Hatfield first contends that when determining whether something is child pornography under the Act, the material "must be considered as a part of the whole work." But, it appears that by "whole work" Hatfield refers to the work from which the images were cut and not the "whole work" into which they were pasted. For example, Hatfield argues that the pages containing nude children cannot be child pornography because they were taken from an "art and photography book" where the child had been "posed nude for the purpose of artistic study."

¶29 The district court found that "[n]one of these images, taken alone, constitute child pornography." But, the district court also found that, "cut-and-pasted together, the pages constitute child pornography," and specifically that the images showed the minor engaged in the sexually explicit conduct of "the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person."

¶30 The district court did not err in considering the images as a "cut-and-pasted" collage. The Act specifically states that "[i]n determining whether material is in violation of this chapter, the material need not be considered as a whole, but *may* be examined by the trier of fact in part only." *Id.* § 76-5b-301(1) (emphasis added). This statement presumes that the trier of fact can consider the "material" as a "whole." Thus, the district court did not err in concluding that images that might not meet the definition of child pornography in one context, could in another. Even assuming that Hatfield is right about the images' origins and that the images in their original context did not depict nudity for the purpose of sexual arousal, the inclusion of an image in a collage could convert the image into one depicting child nudity for the purpose of causing sexual arousal. *See, e.g., id.* § 76-5b-103(1) (stating "any visual depiction" includes images "made or produced by electronic, mechanical, or other means").

¶31 Hatfield next contends that the district court erred in concluding that his collage pages depicted nudity for the purpose of causing sexual arousal of any person. Hatfield relies on the so-called *Dost* factors to support his argument. *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). These factors are 1) "whether the focal point of the visual depiction is on the child's genitalia or pubic area"; 2) "whether the setting of the visual depiction is sexually suggestive"; 3) "whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child"; 4) "whether the child is fully or partially clothed, or nude"; 5) "whether the visual depiction suggests sexual coyness or a

willingness to engage in sexual activity"; and 6) "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id.*; *see also State v. Morrison*, 2001 UT 73, ¶ 18, 31 P.3d 547.

¶32  We borrowed the *Dost* factors from the Southern District of California. *See Dost*, 636 F. Supp. at 832. And we applied them to help us determine whether a depiction was designed "for the purpose of sexual arousal of any person." *See Morrison*, 2001 UT 73, ¶¶ 18, 20. We injected these factors into our jurisprudence with a healthy dose of caveat. We noted that because *Dost* involved the lascivious exhibition of genitals or pubic areas that some of the factors may not be helpful. *See id.* We also specifically cautioned that "not all of [the factors] are applicable." *Id.* ¶ 20; *see also State v. Jordan*, 2018 UT App 187, ¶ 42 n.10, 438 P.3d 862 (finding counsel was not ineffective for failing to object that the images were sexually explicit based on the *Dost* factors because criminal liability turned on the depiction of nudity for the purpose of causing sexual arousal of any person). And we warned that the "inquiry will always be case-specific" and that there "*may be other factors that are equally if not more important*" in determining whether an image is intended or designed to elicit a sexual response in the viewer. *Morrison*, 2001 UT 73, ¶ 18 (emphasis in original) (quoting *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999)).[7]

¶33 Hatfield acknowledges these caveats, but nevertheless argues that when viewed through the *Dost* lens, the collages are not child pornography. Primarily, Hatfield contends that because the images of the girls are not sexually suggestive, some of the girls are clothed, and the girls are not in unnatural poses, application of the *Dost* factors leads to the conclusion that the images are not pornographic.

¶34 The district court did not analyze the collage pages with reference to the *Dost* factors. But this does not automatically translate into error. The *Dost* factors are a tool that a district court can use to assist in answering the ultimate question: does the material fall under the Act's definition of child pornography? As analyzed more fully below, for the two counts based on the nudity of a minor, the

---

[7] As we have done in other contexts, we stress that our reference to the *Dost* factors was not meant to serve as a definitive multifactor test or checklist to determine whether an image constitutes child pornography. *See, e.g.*, *Met v. State*, 2016 UT 51, ¶¶ 89–90, 388 P.3d 447; *State v. Cuttler*, 2015 UT 95, ¶¶ 2, 18–21, 367 P.3d 981.

district court correctly concluded that the images were designed to promote sexual arousal. For the images involving clothed minors, the district court erred. As evidenced below, we can reach those conclusions without resorting to *Dost*. Thus, the district court did not err simply by failing to utilize the *Dost* factors in its analysis.

¶35 Hatfield next contends that the district court erred by interpreting the Act in a fashion that did not require the child to be nude when she engages in "the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal."[8] *See* UTAH CODE § 76-b-103(10)(f).

¶36 Subsection 103(1)(c) requires that the minor "appear" to be "engaging in sexually explicit conduct." Engage is defined as "[t]o involve oneself or become occupied; participate." *Engage*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2012); *see also Engage*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/engage (defining "engage" as "to do or take part in something—used with *in*"). Participation or taking part in something requires more than just being present or nearby the activity. Accordingly, the Act's plain language requires that to "engage in" nudity the minor must be nude.

¶37 Thus, we agree with Hatfield that a minor cannot "appear" to be engaging in the depiction of nudity without being or seeming to be nude.[9] Therefore, subsection 103(10)(f)—which includes "the visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person" in the definition of "sexually explicit conduct"—does not apply to fully clothed minors.[10] Thus, as explained more fully below, the district court erred when it applied

---

[8] The State appears to agree implicitly with Hatfield on this point. Although the State does not concede that the district court erred in applying subsection 76-5b-103(10)(f) to collages containing images of clothed children, the State contends that we should analyze the images under subsection (b)—which includes masturbation in the Act's definition of sexually explicit conduct—and subsection (g)—which includes "the fondling or touching of the genitals, pubic region, buttocks, or female breast" in the definition.

[9] *See supra* ¶ 27.

[10] To be clear, the minor need not be nude for the other parts of subsection 103(10) to apply.

an incorrect interpretation of subsection 103(10)(f) to images of clothed minors.

¶38 Lastly, Hatfield argues that the Act is ambiguous and we should employ the constitutional avoidance canon to give the Act a meaning that would not criminalize Hatfield's possession of the collages. Hatfield alleges the Act, if applied to his collages, is overbroad under the First Amendment and would sweep in protected speech. He also contends the Act is vague under the federal due process clause and does not provide adequate warning as to what conduct or materials are prohibited. Hatfield implores us to avoid these potential issues by interpreting the Act in a manner that leaves his collage pages out of the Act's grasp.

¶39 The mere presence of potential constitutional issues does not trigger the canon of constitutional avoidance. "Constitutional avoidance rests 'on the reasonable presumption' that where there is more than one plausible interpretation of a statute, the legislature 'did not intend the [interpretation] which raises serious constitutional doubts.'" *State v. Garcia*, 2017 UT 53, ¶ 59, 424 P.3d 171 (alteration in original) (quoting *Clark v. Martinez*, 543 U.S. 371, 381 (2005)). "Principles of constitutional avoidance are not an invitation for us to break faith with the statute's text." *Id.* "Even when we are trying to save a statute from constitutional concerns, we are not at liberty to rewrite the statute . . . . Our job is to interpret the statute as the legislature wrote it." *Id.*

¶40 We first look to see if the Act is ambiguous; if it is unambiguous, the analysis ends, and the plain language prevails. If, on the other hand, the statute lends itself to multiple plausible interpretations, we look to see if there is a plausible reading that avoids the constitutional issue. *See Clark*, 543 U.S. at 385. Stated differently, to invoke the canon, Hatfield must convince us that there are two plausible readings of the statute.

¶41 Hatfield has failed to do this. Hatfield focuses his ambiguity argument on the word "appear" in section 76-5b-103. Hatfield contends that the Legislature may have employed "appear" in one of two different ways. First, Hatfield proposes that the plain language of the statute indicates that to "appear" means that it "must look like or seem to be that the child is participating in the visual depiction of nudity for the purpose of causing sexual arousal." In other words, the sexual act must appear realistic. Second, Hatfield suggests that "appear" could also mean that a person could look at an image and understand what it is trying to depict without it looking realistic or the event actually having occurred. And Hatfield posits that the

second reading could lead to unconstitutional applications of the statute.

¶42 We do not agree with Hatfield that the Legislature's use of the undefined "appear" renders the statute ambiguous. This is because, as explained above, we conclude that the Act unambiguously requires the depiction of an act of sexually explicit conduct that in reality occurred or a depiction of simulated sexually explicit conduct that an average person would perceive as something that appears to have occurred. *See supra* ¶¶ 22–26.

¶43 Because we are not presented with two plausible constructions, we need not engage the canon of constitutional avoidance nor address the validity of the constitutional issues Hatfield alleges. *See Steiner v. Utah State Tax Comm'n*, 2019 UT 47, ¶ 60 n.21, 449 P.3d 189 (stating that the canon of constitutional avoidance applies only when the statute is genuinely susceptible to two constructions and finding the statute at issue was unambiguous); *see also Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 24, 332 P.3d 900 ("Where possible, we decide cases 'on the preferred grounds of statutory construction,' thereby avoiding analysis of underlying constitutional issues 'unless required to do so.'" (citation omitted)).

## II. Hatfield's Collages

¶44 Hatfield next contends that there was insufficient evidence to convict him on the four charges of exploitation of a minor. To prove a claim of sexual exploitation of a minor, the State must show Hatfield "knowingly produce[d], possesse[d], or possesse[d] with intent to distribute child pornography" or that he "intentionally distribute[d] or view[ed] child pornography." UTAH CODE § 76-5b-201(1)(a). The depictions of child pornography must be "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct" as defined in the Act. *Id.* § 76-5b-103(1), (10), (11).

¶45 As detailed above, the Act requires that child pornography depict identifiable minors. An identifiable minor is one who "was a minor at the time the visual depiction was created, adapted, or modified" and "who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a birthmark, or other recognizable feature." *Id.* § 76-5b-103(3). Hatfield does not contend that the minors whose images appear in the collages are not identifiable.

13

¶46 There is also no dispute that Hatfield possessed and viewed the pornographic images in his scrapbook. And the images qualify as "any visual depiction" as they are a collage of photographs and pictures made by mechanical or other means. *Id.* § 76-5b-103(1).

¶47 The remaining issue is whether these minors are engaging in or appear to be engaging in sexually explicit conduct. The State charged Hatfield under the Act's subsection that criminalizes the possession of images "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." *Id.* § 76-5b-103(1)(c). The sexually explicit conduct underlying counts one and three is the "visual depiction of nudity or partial nudity for the purpose of causing sexual arousal of any person." *Id.* § 76-5b-103(1)(c), (10)(f). As such, to convict on counts one and three, the State must show that the images 1) depict actual nudity or partial nudity of a minor and 2) did so for the purpose of causing sexual arousal. *See State v. Mills*, 2012 UT App 367, ¶ 41, 293 P.3d 1129. As to counts two and four, the State must show the images "duplicate[ ], within the perception of an average person, the appearance of an actual act" of masturbation or the fondling or touching of genitals. UTAH CODE § 76-5b-103(10)(b), (10)(g), (11).

### A. Count One: First Page

¶48 The district court found the First Page was arranged to appear that an identifiable minor was engaging in sexually explicit conduct—nudity for the purpose of causing sexual arousal. *See id.* § 76-5b-103(10)(f). The First Page contains a cut-out of an adult male with an erect penis and an open hand pasted above the male figure. There is also a photograph of a nude pre-pubescent girl facing forward. This meets subsection 103(10)(f)'s definition of "nudity" since the girl is in a state of undress and her genitals, pubic region, and breasts are "less than completely and opaquely covered." *Id.* § 76-5b-103(8).

¶49 We agree with the district court that the First Page was created for the purpose of causing sexual arousal. Here, the nude minor was placed next to other sexually explicit images. This causes us to agree with the district court and conclude there was sufficient evidence that the depiction of the nude minor on the scrapbook collage page was for the purpose of causing sexual arousal. The district court did not err in denying Hatfield's motion as to count one regarding the First Page.

### B. Count Two: Second Page

¶50 The district court found the Second Page was arranged to appear that an identifiable minor was engaging in sexually explicit

conduct, namely nudity for the purpose of causing sexual arousal of any person. *See id.* § 76-5b-103(10)(f). However, the Second Page does not depict a nude or partially nude minor. As described above, for subsection 103(10)(f) to apply, the minor must "engage" in the nudity by being nude. Because no minor is engaged in nudity on the Second Page, the district court erred in finding that the page met the Act's definition of child pornography.

¶51 The State implicitly acknowledges this but argues that we can affirm on any basis apparent in the record and that it is apparent that the collage is child pornography under the Act because it reflects simulated masturbation or fondling of genitals. *See id.* § 76-5b-103(10)(b), (g). To prevail on this argument, the State would need to show that the image "duplicates, within the perception of an average person, the appearance of an actual act" of masturbation or the fondling or touching of genitals. *Id.* § 76-5b-103(10)(b), (10)(g), (11).

¶52 The Second Page contains a partial profile of an adult male on the left side of the page, with his erect penis visible from his unzipped pants. A young, fully-clothed girl's hand is in a reaching motion and pasted over the man's penis so she appears to be holding his penis. Above the girl is a typed text bubble that says, "Is this right, mister?" In the bottom left corner are the typed words, "Teach her well."

¶53 The Second Page does not meet the requirements of "simulated sexually explicit conduct" because a reasonable viewer would not believe that the image depicts an "actual act." *See id.* § 76-5b-103(11). The cut and pasted collage is rudimentary. The minor girl is plainly not in the same location as the man. A reasonable viewer would not perceive that the girl was actually engaged in the depicted conduct. In short, the image does not duplicate the appearance of the *actual act* of masturbation or fondling or touching of the genitals. This does not meet the definition of child pornography under the Act. Therefore, we reverse as to count two.

### C. Counts Three and Four: Third Page

¶54 The district court found the Third Page was arranged to appear that an identifiable minor was engaging in sexually explicit conduct, namely nudity for the purpose of causing sexual arousal of any person. *See id.* § 76-5b-103(10)(f). The Third Page contains multiple images including photographs of two clothed girls which were cut and pasted in the center of the page. One of the girls has been positioned so that she appears to have her arms around an erect penis that is taller than she. Pasted in the upper corners are images

of adults having sex. The bottom right corner contains a photograph of a nude pre-pubescent girl.[11]

1. Count Three

¶55 We presume count three relates to the image of the nude minor on the Third Page with many other pornographic images. The photograph of the nude minor constitutes "actual" sexually explicit conduct. *Id.* § 76-5b-103(10)(f). The photograph depicts nudity because the girl's genitals, pubic region, and breasts are less than completely and opaquely covered. *Id.* § 76-5b-103(8).

¶56 We agree with the district court that the depiction of the nude child is for the purpose of causing sexual arousal. Given the juxtaposition of the image of the nude minor with images of adults engaged in sexual activities, there was sufficient evidence to permit the court to conclude that the purpose of the depiction of the nude girl on the page was to cause sexual arousal. We affirm as to count three.

2. Count Four

¶57 We presume count four relates to the image of the clothed girl appearing to hug an enlarged penis. The State argues this is simulated masturbation and fondling or touching of the genitals. *See id.* § 76-5b-103(10)(b), (g). To prove count four, the State must show the image "duplicates, within the perception of an average person, the appearance of an actual act" of masturbation or the fondling or touching of genitals. *Id.* § 76-5b-103(10)(b), (10)(g), (11).

¶58 This image does not duplicate an *actual act* of masturbation or fondling or touching of the genitals. The girl does not appear to be

---

[11] It is unclear exactly which count refers to which minor. As previously stated, for the purposes of our review, we assume count three relates to the naked minor included in the collage, and count four relates to the clothed girl appearing to hug the penis. It is also unclear from the charges and briefing if count four relates to just one clothed girl or both clothed girls. Count four discusses a page "which depicts multiple lascivious exhibitions of the genitals of several individuals, two female children." Hatfield briefed the issue addressing only the fully clothed girl appearing to hug the penis. The State briefed the issue regarding simulated masturbation involving "two of the girls" and the "girls' portrayed fondness for a penis." Because both girls are clothed, the distinction does not change our analysis.

in the same location as the penis. And given the relative sizes of the images in the collage, it would be impossible for an average person to perceive that the girl is engaged in an actual act of masturbation. Even the State concedes that "no one would think that the two girls are masturbating an actual oversized penis."

¶59 The State contends that the collage nevertheless meets the Act's definition of child pornography because "the average person would see what appears to be an act of masturbation . . . ." But the Act requires more than this; it requires the depiction of an "actual act" of sexually explicit conduct.[12]

¶60 The girl in the collage does not appear to be engaged in the actual act of hugging or fondling the penis. This is impossible given the relative proportion of the images; the girl is smaller than the penis by a couple of feet. Since this image does not depict or duplicate the appearance of the actual act of masturbation or fondling or touching the genitals, it does not meet section 76-5b-103(11)'s definition of "simulated sexually explicit conduct." We reverse the district court's decision that sufficient evidence existed to convict Hatfield on count four.

**CONCLUSION**

¶61 The Act requires that an image depicting child pornography be "created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." UTAH CODE § 76-5b-103(1)(c). This can be actual or simulated conduct. Any "simulated sexually explicit conduct" must duplicate "within the perception of an average person, the appearance of an *actual act* of sexually explicit conduct." *Id.* § 76-5b-103(11) (emphasis added).

¶62 The images underlying counts one and three depict actual sexually explicit conduct, specifically, actual nudity of a minor "for the purpose of causing sexual arousal of any person." *Id.* § 76-5b-103(10)(f). Thus, there was sufficient evidence to convict Hatfield on

---

[12] To be clear, this image, like that on the Second Page, is disturbing and undoubtedly exists for the purpose of sexual stimulation. But we are not applying the standard that Justice Potter Stewart propounded in his famous concurrence in *Jacobellis v. Ohio*, 378 U.S. 184 (1964) (Stewart, J., concurring). That is we cannot say that these collages are child pornography just because we "know it when [we] see it." *Id.* at 197. We apply the definition the Act provides, and under that standard, those collages cannot be considered child pornography.

these counts, and we affirm the district court's denial of Hatfield's motion and his conviction on those two counts of sexual exploitation of a minor.

¶63 However, the second and fourth counts represent simulated sexually explicit conduct. These images do not meet the Act's definition of simulated sexually explicit conduct because they do not duplicate the appearance of an actual act of sexually explicit conduct. We therefore reverse as to counts two and four and remand to the district court.

────────────