2024 UT App 188

## THE UTAH COURT OF APPEALS

RMB INC. AND SHAMAN INC.,
Appellants,
*v.*
CORBIN G. CELOTTO,
Appellee.

Opinion
No. 20230393-CA
Filed December 19, 2024

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 190900552

Trent J. Waddoups, Attorney for Appellants

Bryan J. Stoddard, Blake A. Hallock, and Jonathan P. Barnes Jr., Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1 After an evening of barhopping and consuming a lot of alcohol, Corbin G. Celotto caused an automobile accident with injuries. The injured driver sued Celotto and the bars that had allegedly served him alcohol when he was already demonstrably drunk. The parties all settled the claims the injured driver made against them. Two of the bars sought contribution from Celotto for the money they paid in settlement. The district court ruled that such contribution claims could not be maintained under the Alcoholic Product Liability Act (the Dramshop Act), *see generally* Utah Code §§ 32B-15-101 to -302, because the settlement did not constitute an "award" as required by the Dramshop Act. The bars appeal. We affirm the district court.

BACKGROUND

¶2    An injured driver sued Celotto for negligence and recklessness based on a wrong-way auto collision, asserting that Celotto was intoxicated when the crash happened. Relying on the Dramshop Act, the injured driver later amended his complaint to include claims against five bars that allegedly overserved alcohol to Celotto prior to the collision. Two of the bars—RMB Inc. and Shaman Inc. (the Bars)—asserted contribution crossclaims against Celotto and the other bars. *See* Utah Code § 32B-15-302(1)(a) (stating that "a person, . . . against whom an award is made under [the Dramshop Act], may bring a separate cause of action for contribution against any person causing the injury and damage").

¶3    The injured driver's claims against two of the other bars were dismissed on summary judgment. And the injured driver settled his claims against Celotto; those claims were dismissed. The injured driver also settled his claims against the remaining three bars for a combined amount of one million dollars, and those claims were dismissed.

¶4    After the settlements, the only remaining claims were the contribution claims of the Bars against Celotto. It is these contribution claims that are at issue in this appeal. Celotto moved for summary judgment on these claims, arguing that Utah Code section 32B-15-302(1)(a)'s reference to an "award" does "not include money paid in a settlement agreement." Celotto asserted,

> Since there was no trial or arbitration proceeding of any kind in this case, there was no "award." Therefore, whatever money [the Bars] paid to [the injured driver] to settle disputed claims would not qualify as an "award" under the statute. Consequently, neither [of the Bars] qualify as someone "against whom an award is made under [the Dramshop Act]."

¶5      After oral argument, the district court agreed with Celotto and granted the motion. In its ruling, the court stated that an award "means something that is conferred, bestowed, granted, typically, having to do with . . . jury verdicts, arbitrator awards, [or] court verdicts after disputed hearings." It further explained that awards are "approved by the [c]ourt. They are bestowed by somebody. They are not necessarily, again, something that is stipulated to, something that's agreed to, something that is conceded." With this fundamental quality of an award being something that is conferred, the court stated that there wasn't "any real support for [an award] to include a settlement" under the statute. Given the undisputed facts that the Bars "settled the claims brought against them" by the injured driver, the court concluded "no 'award' was made against them" and the Bars were therefore not entitled to pursue a contribution claim against Celotto under section 32B-15-302(1)(a). The Bars moved to alter or amend the judgment, repeating many of their previous arguments. After additional oral argument, the district court denied the motion.

ISSUE AND STANDARD OF REVIEW

¶6      The Bars appeal, arguing that the district court erred in granting summary judgment when it determined that the Bars were not entitled to pursue a contribution claim against Celotto because the term "award," as used in Utah Code section 32B-15-302(1)(a), excludes voluntary settlements. We review a district court's decision to grant or deny a motion for summary judgment for correctness. *See Springdale Lodging, LLC v. Town of Springdale*, 2024 UT App 83, ¶ 15, 552 P.3d 222. Likewise, we review questions of statutory interpretation for correctness. *See McKitrick v. Gibson*, 2021 UT 48, ¶ 14, 496 P.3d 147.

ANALYSIS

¶7     The Bars claim that the district court erred in its interpretation of the contribution provision of the Dramshop Act. More specifically, the Bars argue that "award," as used in the statute, is "consistent" with "payment." That the money they paid to the injured driver was made pursuant to a settlement should not matter, the Bars argue, asserting that this money was still an "award" because the injured driver's compensation "request was presented in the form of a lawsuit." Under this view, the Bars assert, because "an award is something provided upon request like an 'award of attorney fees' or an 'award of a new trial,' the payment made by the Bars was an 'award' although it was not directly compelled by a judge, jury or arbitrator."

¶8     The Bars' claim of error revolves around the proper interpretation of the contribution provision of the Dramshop Act. In relevant part, the contribution provision reads as follows:

> (a) [A] person, . . . against whom an award is made under [the Dramshop Act], may bring a separate cause of action for contribution against any person causing the injury and damage.[1]

> (b) The maximum amount for which a person causing the injury and damage may be liable to a person seeking contribution is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that person causing the injury and damage.

Utah Code § 32B-15-302(1).

---

1. "[A]n employer is liable for the actions of its staff in violation" of the Dramshop Act. Utah Code § 32B-15-202(1)(a).

¶9      The key phrase requiring interpretation is this portion of the contribution provision in subsection (a): "against whom an award is made." "When interpreting a statute, our primary objective is to ascertain the intent of the legislature, the best evidence of which is the plain language of the statute itself." *Taylor v. Taylor*, 2022 UT 35, ¶ 28, 517 P.3d 380 (cleaned up). And "we read the plain language of the statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *State v. Bess*, 2019 UT 70, ¶ 25, 473 P.3d 157 (cleaned up). "Only when we find that a statute is ambiguous do we look to other interpretive tools such as legislative history." *State v. Holm*, 2006 UT 31, ¶ 16, 137 P.3d 726.

¶10     After considering the statutory language in light of our rules of statutory interpretation, we perceive no error in the district court's articulation that "award," as used in section 32B-15-302(1)(a), excludes amounts paid pursuant to a bargained-for settlement. The common definition of the word "award," the grammatical structure of the contribution provision, and the surrounding statutory language all lend abundant support to this conclusion.

¶11     The Dramshop Act doesn't define the term "award," meaning the term should be understood as it is commonly defined in dictionaries. *See Bermes v. Summit County*, 2023 UT App 94, ¶ 36, 536 P.3d 111 ("Where a term is not defined, we assess the ordinary meaning of the term using the dictionary as our starting point." (cleaned up)), *cert. denied*, 540 P.3d 80 (Utah 2023). Thus, "we begin our interpretive task by examining the ordinary meaning or usually accepted interpretation of the statutory language. When interpreting statutes, we look to the ordinary meaning of the words, using the dictionary as our starting point." *State v. Hatfield*, 2020 UT 1, ¶ 17, 462 P.3d 330 (cleaned up); *see also* Utah Code § 68-3-11 ("Words and phrases are to be construed according to the context and the approved usage of the language . . . .").

¶12   "Award" is defined as "a judgment, sentence, or final decision," especially "the decision of arbitrators in a case submitted to them." *See Award*, Webster's Third New Int'l Dictionary (2002). Or it can mean "something that is conferred or bestowed upon a person." *Id.* Black's Law Dictionary gives largely the same definition, defining "award" as a "final judgment or decision," especially "one by an arbitrator or by a jury assessing damages." *See Award*, Black's Law Dictionary (12th ed. 2024). These definitions leave little doubt that the term "award" means something that is conferred, bestowed, or granted, usually in the context of a jury or an arbitrator assessing damages. Nothing in these definitions suggests that the common meaning of "award" extends to settlements that are bargained for.

¶13   The grammatical structure of the contribution provision also excludes bargained-for settlements from the statute's definition of an "award." The Bars resist this conclusion by making much of the provision's use of "award" as a noun rather than a verb. The gist of their argument, while somewhat difficult to follow, seems to be that if the legislature had used "award" as a transitive verb, it would necessarily mean that "damages" were being given by a court or some other authority. But because "award" is a noun in the contribution provision, the Bars argue that it means an act, which would require the statute to pair "award" with a subject (e.g., court, jury, or arbitrator) capable of carrying out that act of making an award. The Bars assert that this noun usage of "award" bolsters their position that settlements can support a contribution claim. The Bars' argument here is as esoteric as it is unpersuasive. Put simply, it makes little difference that the contribution provision uses "award" as a noun once one considers the surrounding grammatical context in which the term appears.

¶14   The word "award," admittedly a noun in the provision, does not exist in some sort of grammatical vacuum apart from the words that accompany it. After all, "we do not view individual

words . . . in isolation; instead, our statutory interpretation requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *Hatfield*, 2020 UT 1, ¶ 16 (cleaned up). The grammatical structure of the contribution provision is fairly straightforward. The clause in question—"against whom an award is made"—consists of a noun proceeded by an indefinite article—"an award"—that functions as the subject of the clause. "[I]s made"—a passive verb phrase—stands in as the verb. The Bars mistakenly try to analyze "award" by separating the word from its context rather than by considering it as part of the subject clause—"an award is made." Moreover, this subject clause is itself modified by a prepositional phrase—namely, "against whom"—with "whom" being the object of the preposition and in obvious reference to the one determined to be liable for the award. This excursus into grammar is not meant to edify the reader but merely to drive home the point that the "award" mentioned in the statute is a "thing" being imposed *on* someone *by* someone with the authority to do so—which is perfectly clear from the statute's inclusion of the prepositional phrase modifying "an award." True, the statute does not say who—judge, jury, or arbitrator—makes the award, but the grammatical structure of the provision—especially with the use of the passive construction, "is made"—is abundantly clear that some authority "make[s]" an award. Nowhere does the plain meaning suggest that an "award" is a settlement that parties, of their own volition, freely enter into.

¶15  Finally, the wider context of the statute supports the interpretation that "award" is used in the ordinary sense of being conferred by a court or other authority after an adversarial process. As our caselaw makes clear, statutory terms are not read in isolation but in context. Reading terms in isolation runs the risk of shrouding them in an idiosyncratic meaning at odds with the plain meaning of the statute. That is what the Bars attempt to do here by suggesting "award" is expansive enough to include "settlement." Such an interpretation not only conflicts with the

common meaning of the term and the grammatical structure of the contribution provision, but it also fails to fit the wider context of the statute. We are required to interpret a statute so as to construe each part or section in connection "with every other part or section" such that we give meaning to all parts. *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (cleaned up); *see also State v. Maestas*, 2002 UT 123, ¶ 54, 63 P.3d 621 ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." (cleaned up)). Along these lines, a "party's suggested interpretation of a statute is not reasonable . . . when it contradicts the plain language of the statute." *State v. Wilkerson*, 2020 UT App 160, ¶ 11, 478 P.3d 1048 (cleaned up). Here, the Bars' suggestion that "award" includes voluntary settlements runs contrary to other key language in section 32B-15-302, in particular that found in the next subsection stating that the "maximum amount for which a person causing the injury and damage may be liable to a person seeking contribution is that percentage or proportion of the *damages* equivalent to the percentage or proportion of fault attributed to that person causing the injury and damage." *See* Utah Code § 32B-15-302(1)(b) (emphasis added). Subsection (b)'s use of the term "damages" shows that the "award" mentioned in subsection (a) is the product of an adversarial process and does not include a bargained-for agreement through settlement.[2]

## CONCLUSION

¶16    Given the above reasoning, we conclude that "award," as used in section 32B-15-302(1)(a) of the Utah Code, does not extend to voluntary settlements, thus precluding the Bars' contribution claims against Celotto. Affirmed.

————

2. Obviously, if the legislature wants to include "settlements" or "claims paid" in the scope of the statute, the legislature is free to do so.